HEEMSOTH-KERNER CORP. (BAUER TYPE FOUNDRY, INC.) *v.* UNITED STATES

**No. 5381**—Invoice dated Frankfurt, Germany, January 25, 1938.
Certified January 27, 1938.
Entered at New York, N. Y., February 5, 1938.
Entry No. 812338.

(Decided August 6, 1941)

*B. A. Levett* for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Dorothy C. Bennett,* special attorney), for the defendant.

DALLINGER, Judge: This appeal to reappraisement involves the question of the dutiable value of certain printing type manufactured

by the Bauersche Giesserei of Frankfurt-am-Main, Germany, and imported by the Bauer Type Foundry, Inc., of New York, the merchandise having been shipped in January, 1938. It was appraised on the basis of its United States value. The importer contends that there exists for said merchandise no United States value, and that the proper basis for appraisement is the cost of production.

It is conceded that there exists for said merchandise neither a foreign nor an export value. The only questions at issue are, first, is there a United States value for said merchandise, as contended by the Government, and second, if not, has the plaintiff proved a value based upon the cost of production.

The plaintiff offered in evidence the testimony of Erich Leipprand, President of the Bauer Type Foundry, Inc., the ultimate consignee and the real importer herein. He testified that his corporation was the exclusive agent in the United States for Bauersche Giesserei, the German manufacturer of said merchandise; that his corporation divides the United States into various sections, as shown by the map which was admitted in evidence as defendant's exhibit 6; that his corporation has appointed so-called distributors to whom it sells the merchandise herein; that said distributors are specially selected and the corporation binds itself not to permit its type to be sold in the respective territory allotted to a distributor by any other person; that said distributors sell the type in their territories but only to consumers at the retail price which is fixed by the witness' corporation; that on an order from a distributor the corporation ships the type directly to the distributor who has entered into an agreement to carry a reasonable amount of the type in stock, a representative contract being admitted in evidence as exhibit 5; that in rare instances a distributor may request that the type be shipped directly to his customer, but in that case the bill is sent to the distributor who pays the same, deducting his commission; that in certain sections of the country, as indicated on said map (exhibit 6), the Bauer Type Foundry, Inc., has agents appointed by it who have the privilege of selling in their respective areas, but who are prohibited from selling in other areas; that these agents sell at fixed prices, orders being transmitted to the Bauer Type Foundry, Inc., which bills the goods directly to the agent's customer and credits the agent with his commission; that the Bauer Type Foundry, Inc., reserves one district for itself, which comprises New York City and vicinity, and also several other districts where it has no duly appointed distributors or agents; that said corporation refuses to sell to any customer located within a district assigned to a distributor; and that in the ordinary course of trade it does not receive orders from a customer in a district allotted to an agent, but occasionally it will accept such an order from a customer in such agent's territory and pay the agent his commission.

In connection with the witness' testimony a book of account of the Bauer Type Foundry, Inc., showing sales of the merchandise herein was admitted in evidence as defendant's collective exhibit 2; a penciled tabulation prepared in longhand and taken from the entries in said book of account submitted for the assistance of the court was admitted in evidence as plaintiff's collective illustrative exhibit A; a typewritten tabulation segregating the sales made to distributors, to agents, and directly to consumers, also for the assistance of the court, was admitted in evidence as plaintiff's illustrative exhibit A–1; a copy of the price list issued by the Bauer Type Foundry, Inc., annexed to a special agent's report, was admitted in evidence as defendant's exhibit 3; two monthly statements from the foreign manufacturer were admitted in evidence as defendant's collective exhibit 4; a contract between the Bauer Type Foundry, Inc., and one of its distributors or dealers was admitted in evidence as defendant's exhibit 5; and a special agent's report was admitted in evidence as defendant's collective exhibit 7. Inasmuch as the last-mentioned report (defendant's collective exhibit 7) appears to deal only with foreign and export values, it possesses little or no probative value.

Upon this record I find the following facts:

1. That the Bauer Type Foundry, Inc., is the sole importer and agent in the United States for the printing type constituting the merchandise at bar.

2. That said Bauer Type Foundry, Inc., sells such type to certain so-called distributors or dealers appointed by it.

3. That said Bauer Type Foundry, Inc., binds itself not to permit its type to be sold by any other person in the respective territory of each distributor.

4. That said distributors or dealers sell the said type in their allotted territories only to consumers at the said retail prices fixed by the Bauer Type Foundry, Inc.

5. That in certain sections of the United States outside of the territories allotted to its distributors, the Bauer Type Foundry, Inc., appoints agents who are given the privilege of selling said type in certain specified areas only at the prices fixed by said Bauer Type Foundry, Inc., the agents receiving certain commissions therefor.

6. That the only type sold by the Bauer Type Foundry, Inc., for resale is that sold to the said distributors, 13 in number, no one of whom may sell to any purchaser outside his respective territory.

Upon these facts it is plainly evident that there exists for said merchandise no United States value, as contended for by the Government. So far as here pertinent, such value is defined in section 402 (e) of the Tariff Act of 1930 as—

* * * the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United

States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, * * *.

It is manifest that the merchandise herein is not freely offered for sale to all purchasers in the usual wholesale quantities, and the case appears to be on all fours with that of *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158. There, as here, certain dealers, limited in number, were selected by the Goodyear Tire & Rubber Co. and were not permitted to sell outside of the districts specially assigned to them. Also, there, as here, the price at which the dealer would sell was fixed by the company—in this case, the Bauer Type Foundry, Inc.

In the last-cited case the appellate court, among other things, said:

. Whatever may be the modern tendency "to thwart competition" we do not consider that it has yet become the *ordinary* course of trade to restrict *all* distributing agencies and control *all* prices until goods have finally reached the hands of the consumer. If such a method of selling and distributing merchandise be the ordinary course of business, it certainly cannot be said that merchandise so controlled and distributed is *freely* offered for sale to *all purchasers* in the usual wholesale quantities in the principal markets of the country of exportation * * *.

Thus, there being no United States value for the merchandise involved herein, the only other question to be decided is whether there is evidence of cost of production. In this connection the plaintiff offered in evidence the affidavit of George Hartmann, managing director of the foreign manufacturer, which was admitted in evidence as exhibit 1. In said affidavit there is set forth the cost of material, fabrication, general expenses, and packing for each of the 14 particular classes of type here in controversy, the figures in question being taken from the original books of entry of the foreign manufacturer.

In regard to the profit, on page 3 of the affidavit occurs the following:

AFFIANT further states that the net profit made by his house on the various type naturally varies according to the style of type and according to the quanti-. ties sold; that due to the fact that his house makes and handles something like 800 or more various types it is impossible to give the exact net profit as to each item; but affiant states that as shown by his books the average net profit on such types has been for the past five years respectively,

| 1938, 9% | 1937, 10% | 1936, 8% |
| 1935, 8% | 1934,  8%. | |

AFFIANT further states that by reason of his familiarity with the trade in Germany as to the manufacture and sale of printing type of the class here in question, he can state of his own knowledge, and does so state, that the average profit made by his house represents the usual profit made by manufacturers in Germany in selling this class of merchandise.

AFFIANT further states that while he has given the average profit as above, he can state of his own knowledge that in no case has his net profit been less than 8% of the total cost of labor, material, fabrication and general expenses, nor have his general expenses been in any case less than 10% of the cost of material, fabrication, manipulation and other processes employed in the manufacturing or producing of such or similar merchandise at a time preceding the date of exportation of the particular merchandise under consideration.

In referring to this affidavit, counsel for the plaintiff in his brief filed herein makes the following statement:

* * *. These cost sheets while giving the cost of labor, material, general expenses and administrative expenses, do not state the profit, but a comparison of the respective costs with the items on the invoice will show this profit.

The table below gives the invoiced item, the entered value and the cost of production excluding profit for each item. The figures are reichmarks per kilo. The last column shows the profit existing between the full cost of material, labor, cost of fabrication and general expenses and the entered value.

|  | Entered value per kilo | Cost of Production per kilo | % of profit on basis of entered value |
|---|---|---|---|
| 8 pt. Futura demi-bold_____ | 4. 50 | 3. 88 | 16 |
| 24 " Corvina Med. Ital_____ | 4. 20 | 3. 69 | 14 |
| 30 " Futura Light_____ | 4. 10 | 3. 45 | 16 |
| 14 " Weiss Ital_____ | 4. 60 | 3. 78 | 14 |
| 11 "  " bold_____ | 3. 80 | 3. 60 | 5. 3 |
| 18 " Barnhard Cursive_____ | 4. 40 | 4. 07 | 8 |
| 24 " Cartoon bold_____ | 4. 20 | 3. 45 | 21 |
| 42 " Bodoni  "  _____ | 4. 10 | 3. 40 | 20 |
| 36 " Corv. Med. Ital_____ | 4. 10 | 3. 69 | 11 |
| 48 "  " Light_____ | 4. 10 | 3. 21 | 26 |
| 48 " Gillis bold_____ | 4. 10 | 3. 83 | 7 |
| 10 " Weiss Roman Bold_____ | 3. 90 | 3. 45 | 13 |
| 6 " Cartoon light_____ | 5. 90 | 4. 73 | 24 |
| 16 " Weiss Roman bold_____ | 4. 50 | 3. 60 | 25 |

It should be noted that in two instances out of the fourteen, the margin of profit is less than 8%, in one case being 5.3% and in the other 7%. The average profit is 15.7%, in one instance running as high as 26%.

It is apparent that counsel for the plaintiff in his computation to determine the profit is at variance with the affidavit of the managing director of the manufacturer. The latter expressly states that the average net profit for the year 1937 was 10 per centum and for the year 1938—the year of exportation of the merchandise herein—was 9 per centum. Counsel's computation is also at variance with the statement in said affidavit that in no case was the manufacturer's net profit less than 8 per centum.

In the said affidavit the affiant's statement that, inasmuch as his company manufactures 800 or more various styles of type, it is impossible to ascertain the net profit as to each class of type herein, is readily understandable. It would be equally understandable that a manufacturer of a great variety of screws, bolts, nuts, etc., may find it difficult, or at least impracticable, to determine the net profit accruing on each size of screw, bolt, or nut made.

I am, therefore, taking the uncontradicted evidence contained in the affidavit as to the cost of material, fabrication, general expenses and packing of each particular class of type involved herein, and adding thereto the profit of the manufacturer for the year 1937, which is 10 per centum. Inasmuch as said merchandise was exported in January, 1938, I am satisfied that the profit fairly applicable in

computing the cost of production is that which accrued during the year 1937 rather than during 1938.

Accordingly, I find the dutiable value of the various classes of type involved herein based upon the cost of production to be as follows:

| Description | Reichsmarks per kilo | Description | Reichsmarks per kilo |
|---|---|---|---|
| 8 pt. Futura demibold | 4. 261 | 42 pt. Bodoni bold | 3. 738 |
| 24 " Corvina Med. Ital | 4. 052 | 36 " Corv. Med. Ital | 4. 052 |
| 30 " Futura light | 3. 791 | 48 " Corv. Light | 3. 529 |
| 14 " Weiss Ital | 4. 156 | 48 " Gillis bold | 4. 208 |
| 11 " Weiss bold | 3. 947 | 16 " Weiss Roman bold | 3. 791 |
| 18 " Barnhard Cursive | 4. 469 | 6 " Cartoon light | 5. 201 |
| 24 " Cartoon bold | 3. 791 | 10 " Weiss Roman bold | 3. 990 |

As to all other merchandise the appeal is hereby dismissed. Judgment will be rendered accordingly.